RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

THOMAS HILL,

        *Petitioner-Appellant,*

    *v.*

CINDI S. CURTIN, Warden,

        *Respondent-Appellee.*

No. 12-2528

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:10-cv-13436—John Corbett O'Meara, District Judge.

Argued: December 3, 2014

Decided and Filed: July 9, 2015

Before:   COLE, Chief Judge; BOGGS, BATCHELDER, MOORE, CLAY, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE, WHITE, STRANCH, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Daniel S. Volchok, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant.   Aaron D. Lindstrom, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Daniel S. Volchok, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. Aaron D. Lindstrom, John S. Pallas, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.   Naveen Ramachandrappa, BONDURANT, MIXSON & ELMORE LLP, Atlanta, Georgia, Benjamin W. Snyder, LATHAM & WATKINS LLP, Washington, D.C., for Amici Curiae.

    GRIFFIN, J., delivered the opinion of the court in which BOGGS, BATCHELDER, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, and KETHLEDGE, JJ., joined. DONALD, J. (pp. 13–38), delivered a separate dissenting opinion in which COLE, C.J., MOORE, CLAY, WHITE, and STRANCH, JJ., joined.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.    Congress passed and President Clinton signed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, effective April 24, 1996.  All habeas corpus actions filed thereafter, such as the present petition, are governed by AEDPA's considerable restrictions on federal court review of state court judgments.  In this case, the district court ruled that the limitations of AEDPA compelled the denial of the habeas petition.  We agree and therefore affirm.

I.

On the first day of Thomas Hill's criminal trial, as potential jurors were "on their way up to the courtroom," Hill informed the Wayne County (Michigan) Circuit Court that he wanted to represent himself.  The state trial judge denied the request as follows:

> No.  The court is not going to allow that, especially at the last minute.  Also, it's not going to be helpful.  There is no early indication of this.  We are ready to proceed with the trial at this time.  To be prepared for that, and to inform the defendant and have him prepared for following the rules of asking questions and rules of evidence, the court is going to have to do that during the trial.  So at this point it's not going to work.

> You may consult with your attorney.  We are going to have you sitting right next to him.  If you would like paper and pen to tell him what you would like, how you would like things, you can do that.

> We expect and want you to have all the participation you want.  We also want you to have a legal representative to follow the rules of the courtroom.  So at this time it is denied.

On September 11, 2007, a jury convicted Hill of armed robbery, Mich. Comp. Laws § 750.529, and carjacking, Mich. Comp. Laws § 750.529a(1).  *People v. Hill*, 766 N.W.2d 17, 21 (Mich. Ct. App. 2009).  As a third-felony habitual offender, Mich. Comp. Laws § 769.11, the trial court sentenced him to concurrent prison terms of twenty to forty years for each conviction.  *See Hill*, 766 N.W.2d at 21.

On direct appeal, the Michigan Court of Appeals affirmed Hill's convictions and sentences. *Id.* at 27. Regarding self-representation, it held that although the lower court failed to comply with *People v. Anderson*, 247 N.W.2d 857 (Mich. 1976) (setting forth self-representation inquiry standards under state law), the record did not support that Hill's request was knowingly and intelligently made. *Hill*, 766 N.W.2d at 27. In the last reasoned state court decision on the issue, the Michigan Supreme Court affirmed on different grounds. It held that Hill's right to self-representation was not violated because his request was untimely and disruptive. *People v. Hill*, 773 N.W.2d 257, 257 (Mich. 2009). Specifically, it stated:

> [T]he ruling of the Wayne Circuit Court denying the request for self-representation "at this time" did not deny the defendant his constitutional right to self-representation where the defendant's request was not timely and granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business. The trial court also did not foreclose the defendant's opportunity to raise the self-representation issue again after jury selection. The record reflects, however, that the defendant never renewed his untimely request. For this reason, we agree with the Court of Appeals that the defendant's constitutional right to self-representation was not violated.

*Id.* (citation omitted). The U.S. Supreme Court denied Hill's petition for certiorari. *Hill v. Michigan*, 559 U.S. 1014 (2010).

Shortly thereafter, Hill filed a timely habeas corpus petition. The magistrate judge issued a report recommending that the district court deny the petition because "[n]o United States Supreme Court case has directly addressed the timing of a request for self representation," and, in light of clearly established law, the Michigan Supreme Court's application was not unreasonable. The district court adopted the report over Hill's objection, denied the petition, and declined to issue a certificate of appealability.

On appeal, we granted Hill a certificate of appealability on the sole issue of whether his right to self-representation had been violated. A panel of this court subsequently issued an unpublished order reversing the district court and granting the writ. *Hill v. Curtin*, No. 12-2528, 2013 WL 8446602 (6th Cir. Dec. 23, 2013). Thereafter, we granted Curtin's petition for rehearing en banc and vacated our order. *Hill v. Curtin*, No. 12-2528, 2014 WL 1923210, at *1 (6th Cir. May 13, 2014).

II.

Congress enacted AEDPA to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases," and "to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 15, 187 L. Ed. 2d 348 (2013). "'[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause. Under this system of dual sovereignty, [the Supreme Court has] consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Id.* (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). "This principle applies to claimed violations of constitutional, as well as statutory, rights." *Id.* "Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 15−16. It provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citations omitted). Indeed, under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102−03 (2011)). In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt*, 134 S. Ct. at 16 (internal quotation marks omitted).

"[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *Id.* "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. ___, 132 S. Ct. 2148, 2155, 183 L. Ed. 2d 32 (2012) (per curiam).

III.

The Sixth Amendment provides that a criminal defendant shall have the right to the assistance of counsel for his defense.  U.S. Const. amend. VI.  In *Faretta v. California*, the Supreme Court recognized a corollary constitutional right "to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so."  422 U.S. 806, 807 (1975).  "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . .  Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment.  The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."  *Id.* at 819−20 (footnote omitted).

However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute."  *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000).  First, a defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id.* at 162.  Such a limit reflects that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."  *Id.*  In other words, if the right is asserted in an untimely manner, it may be deemed forfeited as a threshold matter.

Second, a defendant's decision to represent himself—and thereby waive counsel—must be knowingly and voluntarily made.  *Faretta*, 422 U.S. at 835.  "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."  *Id.* (citation omitted).  Because the dangers and disadvantages of self-representation during trial are so substantial, an accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made "searching or formal inquiry" to ensure that his waiver is knowing, intelligent, and voluntary.  *Patterson v. Illinois*, 487 U.S. 285, 292 & n.4, 298−300 (1988).  This concern is obviated if self-representation is

denied for some other reason, such as untimeliness. And this is exactly why habeas relief is not warranted in this case.

IV.

Habeas relief is not required on the ground that the trial court did not inquire into the basis of Hill's self-representation request. First, the U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request before denying it as untimely. In other words, the trial court's denial of Hill's motion was not at odds with clearly established law. Second, the Michigan Supreme Court's holding was not based on a determination that the trial court's inquiry was *Faretta*-compliant. Rather, the Michigan Supreme Court held that the trial court did not violate Hill's Sixth Amendment right because his "request was not timely and granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business." *Hill*, 773 N.W.2d at 257. The Michigan Supreme Court's decision was not therefore contrary to or an unreasonable application of *Faretta*'s requirement to inquire into whether Hill's request was knowing, intelligent, and voluntary.[1]

It is not clearly established that a trial court must conduct a *Faretta*-compliant inquiry under the facts of this case. Although the Supreme Court has required such an inquiry before *granting* a self-representation request—which is, in effect, a waiver of the right to counsel—it has not required a court to inquire before *denying* a request as untimely. *See Faretta*, 422 U.S. at 835 (The court should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (quoting *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279 (1942))); *Iowa v. Tovar*, 541 U.S. 77, 88−89 (2004) ("[B]efore a defendant may be allowed to proceed *pro se*, he must be warned specifically of the hazards ahead."); *Patterson*, 487 U.S. at 298 (noting that the Supreme Court has "imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial"); *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (holding that a trial court's determination as to the propriety of a waiver of counsel should appear on the

---

[1]Hill does not argue that the state trial court erred in failing to conduct an inquiry. Appellant Supp. Reply Br., at 8 ("Hill never so argued.").

record).   As these cases illustrate, the purpose of the inquiry is to inform the defendant of the hazards of self-representation, not to determine whether a request is timely.   Habeas relief is not warranted on the ground that the trial court failed to conduct an inquiry.

*Faretta* did not establish a bright-line rule for timeliness.   Its holding does, however, necessarily incorporate a loose timing element.   The *Faretta* Court explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial."   422 U.S. at 807, 835.   It then held, "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id.* at 835 (emphasis added).   Thus, to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial.  *See Marshall v. Taylor*, 395 F.3d 1058, 1060−61 (9th Cir. 2005) (discussing *Faretta*'s "timing element"); *see also United States v. Young*, 287 F.3d 1352, 1354 (11th Cir. 2002) ("The [*Faretta*] Court mentioned the timeliness of the request in both the opening paragraphs and the breadth with which the Court announced its decision."); *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007) ("*Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely. . . . The Supreme Court has never held that *Faretta*'s 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial."); *Miller v. Thaler*, 714 F.3d 897, 903 n.5 (5th Cir. 2013) (denying habeas relief on a claim that the state court violated *Faretta* in denying the defendant's self-representation request "a few hours before jury selection").

Beyond this loose limit, the *Faretta* Court did not address timeliness.   Indeed, timing was one of the unanswered concerns that vexed the dissenting Justice Blackmun.   Justice Blackmun raised a series of questions on how the right to self-representation would operate in practice, including:   "How soon in the criminal proceeding must a defendant decide between proceeding by counsel or pro se?   Must he be allowed to switch in midtrial?"  *Faretta*, 422 U.S. at 852 (Blackmun, J., dissenting).   Although lower courts have since established rules regarding when a defendant must assert his right, *see, e.g.*, *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir. 1986) (citing cases), the Supreme Court has never defined the precise contours of *Faretta*'s timing

element. Nor did the Supreme Court announce any clearly established law on timeliness in *Martinez*. The *Martinez* Court held that the right to self-representation is "not absolute" and observed that "most courts require [a defendant] to [assert his right] in a timely manner." 528 U.S. at 161−62.

Given the general standard articulated in *Faretta*, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."); *Woods*, 135 S. Ct. at 1377 ("[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." (internal quotation marks and alteration omitted)).

In this case, in light of *Faretta*'s general standard and *Martinez*'s unequivocal pronouncement that the right to self-representation is "not absolute" and observation that most courts find the right may be forfeited if not asserted "in a timely manner," the Michigan Supreme Court did not unreasonably apply clearly established federal law as determined by the Supreme Court.

V.

On appeal, Hill maintains that the government lacked a sufficient interest to outweigh his right to self-representation. First, he argues that a court may not deny a request based on timeliness alone—without regard to its effect on the proceedings—and, second, even considering its effect, his right outweighed the government's interests. His assertions are unpersuasive under *Faretta*'s general standard and AEDPA deference.

Regarding his first point, the state court did not deny Hill's request independent of the timing's effect on the proceedings. Rather, the Michigan Supreme Court upheld the trial court's denial specifically because "granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business." *Hill*, 773 N.W.2d at 257.

With respect to his second point, Hill concedes that the government has a legitimate interest in trial integrity and efficiency. He nevertheless argues that his *Faretta* right outweighed those interests because he asserted his right once he realized he was dissatisfied with defense counsel. The Michigan Supreme Court's decision was not "objectively unreasonable" merely because the trial court did not grant Hill's request when Hill realized he desired new counsel on the morning of trial. Supreme Court precedent has never afforded defendants a right of self-representation based on dissatisfaction with counsel without regard to timing. Rather, the Supreme Court's general timing standard recognizes that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez*, 528 U.S. at 162; *see also Stenson*, 504 F.3d at 884−85; *Miller*, 714 F.3d at 903 n.5. Moreover, a defendant's subjective dissatisfaction with counsel would be an unworkable benchmark for timeliness. *Moore v. Haviland*, 531 F.3d 393, 405 (6th Cir. 2008) (Rogers, J., dissenting) ("Timeliness . . . cannot be measured from when a defendant perceives the need to represent himself. . . . Recognition of such a right would effectively do away with any meaningful timeliness requirement."). Thus, these arguments lack merit.

The dissenting opinion suggests that our opinion in *Moore v. Haviland*, 531 F.3d 393, "raises significant questions" about our reading of clearly established federal law. However, *Moore* is readily distinguishable. There, we held that a trial judge's "fail[ure] to rule on [a defendant's] unequivocal requests to proceed pro se" violated clearly established law. *Id.* at 404. Unlike the instant case, in *Moore* the defendant requested to represent himself multiple times but "the trial court flat-out failed to exercise its discretion and ultimately did not rule on those requests [and] let the issue go by default instead." *Id.* at 403. Here, there is no question that the judge "promptly and fully" ruled on Hill's motion. *See id.* at 403. Further, in *Moore* we expressly observed that the defendant's requests "were not rejected for untimeliness, either at trial or by the state appellate court," *id.*, thus distinguishing it from the instant case. Our holding in *Moore* does not suggest that a trial judge must conduct a *Faretta*-compliant inquiry before

denying a self-representation request as untimely.  And even if it did, our court's decision would not constitute clearly established federal law as determined by the Supreme Court.[2]

## VI.

Finally, Hill asserts that the Michigan Supreme Court's decision was based on an unreasonable determination of the facts because the trial judge did not make a record of the reasons Hill's last-minute request would have delayed or disrupted the proceedings.  *See* 28 U.S.C. § 2254(d)(2).  However, because the state court's interpretation of the record was debatable, and therefore not unreasonable, habeas relief is not permissible.

"The term 'unreasonable' is no doubt difficult to define."  *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation marks and alteration omitted).  "It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Id.*  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination."  *Id.* (internal quotation marks and alterations omitted).  In finding a state court's factual determination unreasonable, we have construed this standard as requiring reversal only where "[n]o fair and reasonable reading of the record would permit" the factual determination.  *Rice v. White*, 660 F.3d 242, 257 (6th Cir. 2011).[3]

---

[2]The dissent also addresses an argument not raised by Hill, but raised only in an amicus brief:  that the Michigan trial court, by denying Hill's request for self-representation on timeliness grounds, invoked a state-law procedural "rule" to justify avoiding the merits of his request.  Because the procedural rule supposedly invoked—that a request for self-representation must be made if at all prior to the day of trial—is said to be inconsistent with pre-existing Michigan law and had not been previously announced, the dissent reasons that the Michigan courts applied an inadequate procedural bar.

The argument is not simply a variation on the claim at issue; it poses an entirely new challenge never before raised in the parties' briefing or in any court ruling.  This new argument has been effectively forfeited by Hill.

In any event, the argument is without merit because the object of our scrutiny, the Michigan Supreme Court's succinct ruling, makes clear that Michigan law does not recognize a per se rule precluding a day-of-trial assertion of the right to self-representation.  The Michigan Supreme Court's ruling also makes clear that no per se procedural bar was invoked in this case.  *See Hill*, 773 N.W.2d at 257 (citing *People v. Russell*, 684 N.W.2d 745, 750–51 (Mich. 2004), and noting that Hill was not prohibited from raising the self-representation issue again, even after jury selection).

[3]Curtin argues that Hill must overcome the standard of 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  However, because Hill's challenge fails under the standard less deferential to the state, we need not analyze his challenge under the more deferential standard.  *See generally Wood*, 558 U.S. at 300−01.

In this case, the Michigan Supreme Court affirmed the lower court's denial of defendant's request as "not timely" where "granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business." *Hill*, 773 N.W.2d at 257. Although the trial court did not make a lengthy record of the likely causes of delay or disruption, it did specify that preparing defendant to follow the "rules of asking questions and rules of evidence" would cause delay. A trial judge may fairly infer on the day of trial—as the jurors are on their way to the courtroom—that a defendant's last-minute decision to represent himself would cause delay, whether or not the defendant requests a continuance. At a minimum, under these circumstances, the Michigan Supreme Court's upholding of the trial court's factual determination is debatable in light of the whole record and, therefore, not unreasonable.

## VII.

For these reasons, we affirm the judgment of the district court denying the petition for habeas corpus.

———————————

**DISSENT**

———————————

BERNICE BOUIE DONALD, Circuit Judge, dissenting.   In 2007, a Michigan jury convicted Thomas Hill of armed robbery and carjacking.   The trial court sentenced him to concurrent prison terms of twenty to forty years for each conviction.   Hill appealed, asserting, among other claims, that he was denied his Sixth Amendment right to self-representation when the trial court denied his request to represent himself on the first day of trial but before the jury was empaneled. *See Faretta v. California*, 422 U.S. 806, 807 (1975) (holding that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he intelligently and voluntarily elects to do so).   Specifically, just before potential jurors entered the courtroom on the first day of Hill's trial, Hill told his attorney that he wanted to represent himself, and counsel relayed Hill's request to the trial court.   The trial court summarily denied Hill's request, explaining to him that there had been "no early indication" that he wished to represent himself and that his request would not be granted at the last minute.   In the last reasoned state court decision on this issue, the Michigan Supreme Court held that Hill's constitutional right to self-representation was not violated because his request to proceed without counsel was untimely, granting the request at that moment would have been disruptive, and the trial court did not foreclose Hill's opportunity to raise the issue again after jury selection. *People v. Hill*, 773 N.W.2d 257, 257 (Mich. 2009), *cert. denied sub nom. Hill v. Michigan*, 559 U.S. 1014 (2010).   Hill then filed a petition for a writ of habeas corpus in federal court.   The district court denied Hill's petition.

The majority's decision to affirm the district court's denial of Hill's habeas petition can be summed up in just three words: "under these circumstances."   The "circumstances" in question are the underlying facts of *Faretta*, where it was uncontested that Faretta's request for self-representation came "weeks" before his scheduled trial.   The majority finds that—because the Supreme Court stated that "forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender" contravened Faretta's constitutional right to conduct his own defense, *Faretta*, 422 U.S. at 836—a defendant's right to self-representation is clearly

established only if it is asserted at some arbitrary and unspecified benchmark "weeks" in advance of trial. Because I find the majority's mischaracterization of *Faretta*'s holding untenable, I respectfully dissent.

My reasoning is threefold. First, timing is not essential to *Faretta*'s principal holding, which is that a trial court may not constitutionally force a lawyer on a defendant who intelligently and voluntarily chooses to waive his right to counsel and represent himself. *Id.* at 807. To the extent the Michigan Supreme Court relied on the timing of Hill's request to support its substantive conclusion that Hill's constitutional right to self-representation was not violated by the trial court's failure to address whether Hill's request was intelligently and voluntarily made, that conclusion is an unreasonable application of *Faretta* and its progeny. Second, to the extent the Michigan Supreme Court's decision rested on procedural—not substantive—grounds, it did not adjudicate Hill's claim on the merits, and its decision is not entitled to deference under the Antiterrorism and Effective Death Penalty Act. Third, states may erect procedural rules, such as a timeliness requirement, regulating a criminal defendant's assertion of his right to self-representation. However, because the Michigan courts have already determined that the trial court did not comply with Michigan state law or Michigan court rules in summarily denying Hill's self-representation request, Michigan cannot now rely on timeliness as a procedural bar to absolve its erosion of Hill's constitutional rights.

I.

A.

Hill's troubles with his court-appointed counsel began almost immediately. At his arraignment on July 23, 2007, Hill's counsel waived a formal reading of the charges against his client. (R. 7-3, Arraignment Tr., PageID #124.) When Hill professed that he did not understand what was occurring, court-appointed counsel explained to the court that he had talked to Hill. (*Id.* PageID #124-26.) The trial court cautioned court-appointed counsel about his "obligation to inform [Hill] of his right to have the charges read against him." (*Id.* PageID #126.) After a recess to allow court-appointed counsel to confer with Hill, counsel informed the court that "it's been difficult," but "I believe Mr. Hill is prepared to waive the formal reading." (*Id.*) Hill then waived the formal reading of the charges, stating he understood the charges against him. (*Id.*)

The trial court told the parties, in Hill's presence, that any motions must be filed by August 10, 2007, and set trial for September of 2007.  (*Id.* PageID #127.)

Problems arose again as Hill and his counsel prepared for trial.  At a pretrial conference on August 15, 2007, almost four weeks before trial, court-appointed counsel noted that Hill had written a letter to the trial court requesting another attorney.[1]  (R. 7-4, Conference Tr., PageID #132.)  Court-appointed counsel stated that he had talked with Hill, that communication with Hill had been difficult, that "it was difficult the last time," and that Hill wanted to address the court. (*Id.* PageID #132-33.)  Hill then explained, "I had just had a few issues that I'm not very in touch with the court's language on how things go.  And I feel as though my attorney has neglected his duty to represent me in [an] honest and open manner, and this is why I wrote the letter." (*Id.* PageID #133.)   The trial court, having reviewed Hill's letter, informed Hill that he was "wrong on what [he] thought."  (*Id.*)   The trial court stated that it was "going to require that [Hill] and [his] attorney talk these matters over" before it made a decision on Hill's request.  (*Id.*) The court explained that counsel was not ineffective for informing Hill of a plea offer conveyed by the prosecution; on the contrary, counsel had a duty to do so.  (*Id.*)   The trial court further noted that Hill's belief that waiving a formal reading of the charges during the arraignment would result in waiving the ability to have any hearings or to file any potential motions was "not true." (*Id.* PageID #133-34.)   The court then denied Hill's request for new counsel, informing him that he did "not have a right to choose which attorney" would represent him unless Hill presented "a logically based reason to find" that he needed a different attorney.  (*Id.* PageID #134-35.)

The court instructed Hill and his attorney to talk through their problems, noting that it had not heard any reasons to warrant new counsel, from either Hill or counsel. (*Id.* PageID #135.) After "a long discussion over the lunch hour[,]" court-appointed counsel indicated he was "happy to report" to the court that he and Hill had "resolved [their] differences" and that Hill wanted to continue with court-appointed counsel representing him.  (*Id.* PageID #137.)   Hill confirmed that he believed that he and his attorney had come to an understanding, and that he would continue to trial with his court-appointed attorney.  (*Id.*)

---

[1]The letter itself is not part of the record.

At a special pretrial conference held four days before Hill's trial began on September 10, 2007, court-appointed counsel indicated that he had conveyed the prosecutor's plea offer to Hill. Hill had previously declined the offer because he maintained his innocence. (R. 7-6, Special Pretrial Conference Tr., PageID #146.) The court stated that it "ha[d] no knowledge of the facts of this case," but explained to Hill that the prosecutor had made a plea offer and that Hill faced the possibility of life in prison. (*Id.* PageID #146-47.) Hill then asked the court for "some type of hearing before trial," and the trial court again instructed Hill and his counsel to talk. (*Id.* PageID #148.) Counsel replied, "I have gone through this over and over. I don't know what else to say to him. He wants an evidentiary hearing [because the original police report could not be found]." (*Id.*) Court-appointed counsel and the court then explained to Hill that the government's failure to produce a police report would be explored at trial. (*Id.* PageID #148-49.) The court returned to the plea offer and again emphasized that Hill faced a significant prison sentence. (*Id.* PageID #149.) Hill indicated that he understood the significance of the charges and said, "I guess I got to just go with what the court's doing[.]" (*Id.* PageID #149-50.)

When the first day of trial arrived, the trial court asked if there were any issues or motions to address before the jury arrived. (R. 7-7, Trial Tr. 9/10/07, PageID #154.) Court-appointed counsel replied, "Not at this time." (*Id.*) The court then told counsel that the jury was "on their way up." (PageID #154.) As the court was explaining its voir-dire procedures, it noticed Hill trying to speak with his attorney. (*Id.* PageID #155.) The court took a brief recess so that Hill and his counsel could talk. (*Id.*) After the recess, and still before the jury entered the courtroom, Hill's counsel told the court that "Mr. Hill . . . would like to ask the court to represent himself in pro per." (*Id.*)

Hill claims that he and his attorney disagreed about whether to file a pre-trial motion. Hill further asserts that this previous conflict was resolved when his attorney assured him that he would file such a motion. When Hill realized on the first day of trial that his attorney had not followed through on this assurance, Hill felt that he could no longer trust his attorney to represent him and therefore requested to represent himself.

The trial court, however, did not know any of this because it swiftly denied Hill's request, emphasizing its last-minute nature:

No.   The court is not going to allow that, especially at the last minute. Also, it's not going to be helpful.  There is no early indication of this.  We are ready to proceed with the trial at this time.  To be prepared for that, and to inform the defendant and have him prepared for following the rules of asking questions and rules of evidence, the court is going to have to do that during the trial.  So at this point it's not going to work.

You may consult with your attorney.  We are going to have you sitting right next to him.  If you would like paper and pen to tell him what you would like, how you would like things, you can do that.

We expect and want you to have all the participation you want.  We also want you to have a legal representative to follow the rules of the courtroom.  So at this time it is denied.

(*Id.* PageID #155-56.)   With that, Hill's two-day trial commenced.   Hill's court-appointed counsel continued to represent him throughout the proceedings.  Barely a half-hour after it began deliberations, the jury convicted Hill of armed robbery and carjacking, but acquitted him of the two weapons offenses.  (R. 7-8, Trial Tr. 9/11/07, PageID #388-93.)   The trial court later sentenced Hill as a third-felony habitual offender to concurrent prison terms of twenty to forty years for each conviction. (R. 7-9, Sentencing Tr., PageID #404-08.)

B.

Hill appealed his conviction, arguing, *inter alia*, that the trial court violated his right to self-representation.  *See People v. Hill*, 766 N.W.2d 17, 26 (Mich. Ct. App. 2009).   The Michigan Court of Appeals acknowledged that criminal defendants have a constitutional right to self-representation under state and federal law.  *Id.* at 26.  The court further acknowledged that, in order to determine whether the defendant has made the request knowingly, intelligently, and voluntarily, Michigan court rules require that judges follow a set procedure when a defendant asserts his right to self-representation.  *Id.* at 26-27 (citing Mich. Ct. R. 6.005(D)).[2]  The court

---

[2]The Michigan rule provides:

The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Mich. Ct. R. 6.005(D).

held that the "trial court failed to comply with the requirements of [*People v. Anderson*, 247 N.W.2d 857 (Mich. 1976)] and the court rule." *Id.* at 27.[3]

Despite these findings, the Michigan Court of Appeals affirmed Hill's conviction on the ground that he raised his request for self-representation only through counsel and the record did not show his request was knowingly and intelligently made. *Id.* Judge Jansen dissented with respect to Hill's self-representation claim, finding that the trial court "summarily denied his request without ever inquiring into his reasons or attempting to establish whether his expressed desire for self-representation was unequivocal, knowing, intelligent, and voluntary." *Id.* at 27-28 (Jansen, P.J., dissenting).

After Hill sought leave to appeal, the Michigan Supreme Court upheld the Michigan Court of Appeals on alternate grounds. The Michigan Supreme Court first recognized that nothing in federal or state law "require[s] that the defendant must personally assert his constitutional right to self-representation" in order for the request to be valid. *Hill*, 773 N.W.2d at 257. The court further recognized that, had the trial court complied with state law and the Michigan court rule, "a reviewing court could evaluate whether the defendant's request was knowingly, intelligently, and voluntarily made." *Id.* Nevertheless, the Michigan Supreme Court upheld Hill's conviction for three reasons: (1) the request was "not timely"; (2) "granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business"; and (3) Hill "never renewed his untimely request." *Id.* Once again, one jurist dissented, noting that the trial court's failure to inquire regarding Hill's assertion of his right to self-representation contravened *Anderson*. *Id.* at 258-59 (Kelly, C.J., dissenting).

The United States Supreme Court denied a writ of certiorari. *Hill*, 559 U.S. at 1014 (2010). These federal habeas proceedings ensued.

---

[3]In *Anderson*, the Michigan Supreme Court held that a trial court must engage in a three-part inquiry to determine whether a defendant's request to proceed pro se should be granted. 247 N.W. 2d at 859-60. The *Anderson* court grounded this three-part inquiry in the Michigan Constitution, Mich. Const. art. 1, § 13, and the Sixth Amendment right to counsel. *Id.* at 859 (citing *Faretta*, 422 U.S. at 835).

II.

When reviewing a district court's ruling on a petition for writ of habeas corpus, we review legal conclusions de novo. *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), applies to "any claim . . . adjudicated on the merits in State court proceedings." If a claim has been "adjudicated on the merits in State court proceedings," AEDPA limits the availability of federal habeas relief to two circumstances. First, habeas relief is available when a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Only when fair-minded jurists could not disagree that a state court's merits decision conflicts with Supreme Court precedent may a federal court issue a writ of habeas corpus. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Second, habeas relief is available when a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). When a state court has not adjudicated a claim on the merits, however, "AEDPA's deferential standard of review does not apply." *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006).

Under *Richter*, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state courts adjudicated the claim on its merits, in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. at 99. Yet this presumption is not, as the *Richter* Court made clear, irrebuttable: "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. The Supreme Court has held, in decisions issued post-*Richter*, that such rulings are not subject to on-the-merits AEDPA deference. *See Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013) ("The language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was adjudicated *on the merits* in State court.") (internal quotation marks omitted).

III.

Where the majority and I first part company is in answering this question: what is *Faretta*'s holding, and to what extent is that holding specific to the facts of that case? The

majority concedes, "*Faretta* did not establish a bright-line rule for timeliness." Maj. Op. at 8. The majority reasons, however, that *Faretta*'s "holding does . . . necessarily incorporate a loose timing element." *Id.* By underscoring that Faretta's request for self-representation came "[w]ell before the date of trial" and "weeks before trial," *id.* (alteration in original) (quoting *Faretta*, 422 U.S. at 807, 835), the majority finds this to be *Faretta*'s holding: "[i]n forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." *Id.* (alteration in original) (quoting *Faretta*, 422 U.S. at 835). From this single quoted sentence—or, really, these three emphasized words—the majority draws the following conclusion: "[T]o the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Id.*

The majority's cramped reading of *Faretta* essentially dictates that a criminal defendant's self-representation request must be honored only if the *exact* factual circumstance of *Faretta* repeats itself. The reality is that nowhere in the *Faretta* decision did the Supreme Court explicitly state that a defendant's self-representation request must be granted if and only if it comes "well" or "weeks" before trial. As a factual and legal matter, this cannot be the case. The Court was clear that Faretta's request for self-representation came "[w]ell before the date of trial" and "weeks before trial"—just as the majority now stresses. For this reason, timeliness was not and could not have been the focal point of that case because Faretta made his self-representation request well in advance of the trial, and reiterated his request thereafter. *Faretta*, 422 U.S. at 807, 835. Indeed, the State of California never argued to the Supreme Court that Faretta's request was untimely.[4] *See generally*, Respondent's Br., *Faretta v. California*, 422 U.S. 806 (1975) (No. 73-5772), 1974 WL 174862. It is precisely because the State did not raise the issue that there was no reason for the Supreme Court to gratuitously reach the issue of timing. Legally speaking, *Faretta*'s holding cannot be that timeliness is the governing inquiry because the timeliness of Faretta's request was ancillary to the issue presented in that case.

---

[4]Instead, the State argued: (1) there was no constitutional right to self-representation in criminal proceedings, and (2) even if there was such a right, "a defendant who represented himself at trial should not be allowed to raise the issue of the quality of that representation on appeal" and the "denial of self-representation is subject to the harmless error test." Respondent's Br., *Faretta v. California*, 422 U.S. 806 (1975) (No. 73-5772), 1974 WL 174862, at *14, 52, 54.

The case law relied upon by the majority also tends to support this conclusion. For instance, the majority derives its assertion that *Faretta*'s holding "necessarily incorporates a loose timing element" by selectively quoting from the Ninth Circuit's decision in *Marshall v. Taylor*, 395 F.3d 1058 (9th Cir. 2005). *Marshall* observed:

> Supreme Court precedent regarding the permissible timing of a *Faretta* request is scarce. *No Supreme Court case has directly addressed the timing of a request for self-representation.* However, the holding in *Faretta indirectly* incorporated a timing element. . . . Thus, the Supreme Court incorporated the facts of *Faretta* into its holding. Accordingly, the holding may be read to require a court to grant a *Faretta* request when the request occurs "weeks before trial." *However, the holding does not define when such a request would become untimely.*

*Id.* at 1060-61 (emphasis added) (footnotes omitted). What is an "indirect . . . element," other than something that is non-essential to the result in a particular case?

To the extent *Faretta*'s holding acknowledges a "loose timing element," it is merely that courts may look to the state's rules about when a defendant must assert his or her right to self-representation and the defendant's individual circumstances. I readily acknowledge that *Faretta* and the Supreme Court's subsequent cases do not foreclose a state from imposing adequate and independent state procedural requirements on the assertion of the right to self-representation, or from considering the timing and purpose of the request as part of a matrix of factors in determining whether a self-representation request is intelligent and voluntary and in assessing its effect on the integrity and efficiency of the trial. However, in focusing so intently on this "loose timing element," the majority conflates these two discrete aspects of the timing inquiry.

The former aspect is procedural, implicates waiver, and arguably may justify the complete failure to engage in the *Faretta* inquiry that the majority finds permissible here. Problematically, however, the majority simultaneously concludes that the timing of Hill's request made any consideration of *Faretta* unnecessary; the majority insists that the Michigan Supreme Court rejected Hill's claim on substantive grounds and that it reasonably applied *Faretta* in doing so because *Faretta* only recognized a right to self-representation when asserted weeks before trial. This is tantamount to waiver. Nothing in *Faretta* suggests that in the absence of circumstances that would constitute adequate and independent procedural grounds for finding waiver, a trial court can ignore a defendant's voluntary and intelligent invocation of the right to

self-representation based on the timing of the request alone, as a substantive matter. Stated differently, in the absence of an adequate and independent procedural requirement, a trial court must evaluate a defendant's request to proceed without counsel under the *Faretta* framework, which allows for consideration of the timing of the request but nevertheless requires the court to inquire into the nature of the defendant's request—i.e, whether it is voluntary and intelligent, whether it is made for purposes of delay, whether it is timely in relation to the reason for the request, and the effect of the defendant's self-representation on the integrity of the proceedings. *Faretta*'s unequivocal focus is on the voluntary and intelligent inquiry, and it is an unreasonable application of that case to conclude that it permits a trial court to reject a self-representation request on substantive grounds without making inquiry into whether the request is voluntary and intelligent and why the request is being made at that time.

The timeline and circumstances of this case necessitate the conclusion that Hill's substantive constitutional right to self-representation was violated. Although Hill made only one "clear[] and unequivocal[]," 422 U.S. at 835, request to represent himself, one request is enough. The record is also clear that in the lead-up to trial, the Michigan trial court was well-aware of the difficulties Hill had with his court-appointed counsel.

As early as July 23, 2007—seven weeks before trial—the trial court first became aware of communication difficulties between Hill and his court-appointed counsel, and encouraged them to talk things out. Sometime after this, but before August 15, 2007, Hill sent a letter to the court, which the court acknowledged receiving, requesting new counsel—due in part to Hill's lingering concerns from his July 23, 2007, arraignment. By August 15, 2007—roughly four weeks before trial—court-appointed counsel reiterated to the court his continued difficulties in communicating with Hill. The trial court dismissed every concern Hill expressed in his letter and at his August 15, 2007, pretrial conference, and encouraged Hill to "talk these matters over" with counsel and to press forward with counsel's continued representation.

By September 6, 2007—still four days before trial—court-appointed counsel again informed the court of his difficulties with Hill, this time making it clear that there was a difference of opinion regarding strategy between him and his client. Hill wanted an evidentiary hearing regarding a missing police report, while court-appointed counsel insisted that this issue

would be explored through witness testimony at trial.  (R. 7-6, Special Pretrial Conference Tr., PageID #148.)  Hill, protesting his innocence, even went so far as to turn down a generous plea offer.  The trial court—rather than simply continuing the trial date—validated counsel's assertion that the evidence would be explored through witness testimony at trial, and again emphasized the stiff penalties Hill was facing if he turned down the plea offer.  Only then did Hill resolve that he had "to just go with what the court's doing[.]"  (*Id.* PageID #149-50.)

Ultimately, on the day of trial, Hill made his request for self-representation almost immediately after his court-appointed counsel informed the court that he had no issues to raise or motions in limine to argue before the jury was ushered in.  At this moment, Hill realized that his counsel was not honoring the agreement Hill thought they had reached: that counsel would make a certain pre-trial motion.  Only then did Hill determine that he could no longer trust his court-appointed counsel to represent him and asserted his right to self-representation.

This timeline is clear and largely undisputed.  The majority, however, suggests that Hill's request was untimely under "the Supreme Court's general timing standard."  Maj. Op. at 10.  Hill's request for self-representation is only "untimely" if we necessarily prioritize the court's ease of administration over Hill's clearly established Sixth Amendment right to self-representation.  As the majority notes, the Supreme Court has recognized that "the government's interest in ensuring the integrity and efficiency of the trial *at times* outweighs the defendant's interests in acting as his own lawyer."  Maj. Op. at 6, 10 (quoting *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 162 (2000)) (emphasis added) (internal quotation marks omitted).  But the majority—like the Michigan Supreme Court before it—offers no defensible reason why, on the facts of this case, this balancing of interests weighs in favor of the government.

The trial court was plainly on notice, weeks in advance of trial, of the breakdown in relations occurring between Hill and his court-appointed counsel.  Hill made his request at the only possible time it could have been made: the moment he learned his court-appointed counsel would file no pre-trial motions.  According to Hill, he had conditioned his continued acceptance of counsel's representation on the assurance that a particular motion would be filed.  Counsel neglected to file the promised motion, and Hill withdrew his consent to counsel's representation

for that reason.   Accordingly, counsel's continued representation of Hill was impermissible under the Sixth Amendment.  *Faretta*, 422 U.S. at 820 ("To thrust counsel upon the accused, against his considered wish, . . . violates the logic of the Amendment.  In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists.") (footnote omitted); *see also id.* at 821 ("An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction.  Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.")  Moreover, given the trial court's earlier denial of Hill's request for a new attorney, it is only logical that Hill would have determined on the first day of trial that the only option available to him was to represent himself.

Under the majority's approach, Hill is to be denied habeas relief simply because he complied with the trial court's repeated exhortations to talk out and work through his issues with his court-appointed counsel.   Under the majority's approach, had Hill made his self-representation request earlier—at the seven-week mark or at the four-week mark—then he would unequivocally have satisfied the supposed requirements of *Faretta*.  Maj. Op. at 8.  But because Hill made every attempt to do *exactly* what the trial court instructed him to do, the majority finds that his request came too late.   The lesson for criminal defendants, then, is to disregard the court's urgings and invoke one's right to self-representation at the earliest opportunity possible—lest the court later determine one was sleeping on his rights.   I discern nothing in *Faretta* that encourages such a perverse result.[5]

IV.

A.

Unlike the majority, I focus on the core, rather than the fringe, of the Supreme Court's analysis in *Faretta*.   The question *actually* presented in *Faretta* is apparent in the very first paragraph of the Court's opinion: "[W]hether a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do

---

[5]Not only does nothing in *Faretta* sanction such a result, but this result also cuts against the very governmental efficiency concerns that the majority now emphasizes.

so." *Faretta*, 422 U.S. at 807. The Court, after an extensive examination of the deep historical roots of the right to self-representation, *see id*. at 812-17, 821-32, answered this question in the affirmative. Nothing in the Court's holding addressed the timing of the request. Rather, the Court imposed one limitation *on trial courts*: they must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Since *Faretta*, the Court has repeated its directive to the lower courts to warn defendants about the dangers of self-representation. In *McKaskle v. Wiggins*, the Court refined its holding in *Faretta*: "[A]n accused has a . . . right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." 465 U.S. 168, 173 (1984);[6] *see also Indiana v. Edwards*, 554 U.S. 164, 185 (2008) (Scalia, J., dissenting) ("The only circumstance in which we have permitted the State to deprive a defendant of [the right to self-representation] is the one under which we have allowed the State to deny *other* such rights: when it is necessary to enable the trial to proceed in an orderly fashion."). In *Patterson v. Illinois*, the Court reiterated that: "[R]ecognizing the enormous importance and role that an attorney plays at a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial." 487 U.S. 285, 298 (1988). Accordingly, a defendant's waiver of his right to counsel is "'knowing' when he is made aware of these basic facts": that counsel may be useful to the accused during the trial, and that there are "dangers to the accused of proceeding without counsel." *Id.*[7] Nowhere in *Patterson* did the Supreme Court discuss *Faretta*'s supposed "timing element."

---

[6]In *McKaskle*, the Court addressed the appropriate role of standby counsel. 465 U.S. at 173. The statement that a defendant must be "able and willing to abide by rules of procedure and courtroom protocol" is a restatement by the Court of the holding of *Faretta*.

[7]*Patterson* was not, however, a case about the right to self-representation. *See* 487 U.S. at 287. Rather, the Supreme Court looked to *Faretta* in order to determine whether a post-indictment interrogation was the type of proceeding at which the assistance of counsel is enormously important, concluding that the required warnings a court must give before a defendant can waive his right to counsel were critical because counsel is so important at trial. *See id.* at 298.

In *Iowa v. Tovar*, the Court held that the Constitution does not require that courts read a specific script of warnings about the dangers of proceeding pro se so long as the substance of the inquiry provided the defendant with a warning, but reiterated that "before a defendant may be allowed to proceed *pro se*, he *must* be warned specifically of the hazards ahead." 541 U.S. 77, 88-89 (2004) (emphasis added). *Faretta*'s initial requirement that courts inquire to ensure that the defendant waived his right to counsel with eyes wide open remained intact. Nowhere in *Tovar* did the Supreme Court discuss *Faretta*'s supposed "timing element."

Since *Faretta*, the Court has altered the courts' required line of inquiry slightly. In *Godinez v. Moran*, the Court added an additional question trial courts must ask when a defendant asserts his right to self-representation: whether the defendant is competent to stand trial. 509 U.S. 389, 401-02 (1993). But the Court left untouched *Faretta*'s requirement that courts determine whether the defendant's waiver of counsel is intelligent and voluntary. *Id.* ("Thus, *Westbrook* [*v. Arizona*, 384 U.S. 150 (1966)] stands only for the unremarkable proposition that when a defendant seeks to waive his right to counsel, a determination that he is competent to stand trial is not enough; the waiver must also be intelligent and voluntary before it can be accepted."); *see also Edwards*, 554 U.S. at 177-78 (permitting the trial court to deny a defendant's assertion of the right to self-representation if the defendant "suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself].") Nowhere in *Godinez* or *Edwards* did the Supreme Court discuss *Faretta*'s supposed "timing element."

The only other Supreme Court case addressing a criminal defendant's right to self-representation—the case on which the majority relies heavily— is inapposite. In *Martinez*, the Court addressed whether a defendant has a constitutional right to self-representation *on appeal*. 528 U.S. at 154. The Court found that the Sixth Amendment identifies only trial rights. *Id.* at 159-60. Conversely, the right to appeal a criminal conviction "is purely a creature of statute." *Id.* at 160 (internal quotation marks omitted). Although the Court mentioned that most lower courts require a defendant "to elect to conduct his own defense . . . in a timely manner," *id.* at 161-62 (citation omitted), this is simply an acknowledgment that courts can permissibly consider the timing of a defendant's request. It is not a statement that trial courts can deny a

request without determining whether it is, in fact, timely by inquiring into the defendant's reasons for asserting the right at the time it is being asserted.

Thus, the central tenet of *Faretta* remains:  a state may not "force a lawyer upon [a criminal defendant], . . . when he insists that he wants to conduct his own defense" as long as the defendant waives his right to counsel intelligently and voluntarily.  *Faretta*, 422 U.S. at 807. Justice Marshall summarized the holding of *Faretta* as follows:

> Just as we must be watchful not to find a waiver of the right to counsel where none was intended, so must we be cautious not to overlook an asserted right to proceed *pro se* in our well-meant effort to protect the right to counsel. Accordingly, in *Faretta* we indicated that a defendant's clear and unequivocal assertion of a desire to represent himself must be followed by a hearing, in which he is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  A *Faretta* hearing offers a court ample opportunity to assure that a defendant understands and accepts the consequences of his decision, and to create a record to support its finding of a knowing waiver. *As a result, once a defendant affirmatively states his desire to proceed pro se, a court should cease other business and make the required inquiry.*  It is through this hearing that the right to counsel is protected.
>
> . . . .
>
> [T]he *failure* to hold a *Faretta* inquiry at this time *will* do injury to the right recognized in *Faretta*.

*Raulerson v. Wainwright*, 469 U.S. 966, 969-70 (1984) (Marshall, J., dissenting from an order denying certiorari) (first emphasis added) (footnote omitted) (citation omitted).  Thus, even assuming AEDPA applies, it is "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), that when a defendant asserts his right to represent himself, the court must then inquire of the defendant to determine whether he is waiving his right to counsel knowingly and intelligently and whether he can follow the court's rules.  *Faretta*, 422 U.S. at 835; *McKaskle*, 465 U.S. at 173.

That is also the rule of this court.  In *Moore v. Haviland*, we expressly held that a court's failure to conduct a *Faretta*-inquiry is an unreasonable application of Supreme Court precedent. 531 F.3d 393, 404 (6th Cir. 2008) ("Given the state courts' objectively unreasonable misapplication of the law as clearly established in *Faretta*, Moore's habeas petition must be

granted. By failing to rule on Moore's unequivocal requests to proceed pro se, the trial court deprived him of his Sixth Amendment right to self-representation."), *cert. denied sub nom. Welch v. Moore*, 558 U.S. 933 (2009). That is not to say that a circuit precedent governs petitions for habeas corpus. It does not. *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012). Circuit courts may, however, "look to circuit precedent to determine whether it has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450-51 (2013) (per curiam) (citing, *inter alia*, *Tolliver v. Sheets*, 594 F.3d 900, 916 n.6 (6th Cir. 2010) ("We are bound by prior Sixth Circuit determinations that a rule has been clearly established")).

*Moore* raises significant questions regarding the majority's approach in the instant case. In *Moore*, the defendant asserted his right to represent himself at trial on the third day of a four-day jury trial. *Id.* at 395-400. We held that the defendant's request was *not* untimely because he raised the claim as soon as he became aware of grounds for his dissatisfaction with counsel:

> We have no quarrel of course with the notion that a defendant's invocation of the right of self-representation must be timely—but here it was not until the trial was well under way that Moore's grounds for dissatisfaction with counsel's representation arose—and he then acted swiftly. Moore can scarcely be faulted on some concept of tardiness under those circumstances. If he had not acted when he did—if he had waited for the trial to conclude and then sought post-conviction relief on the basis of constitutionally ineffective representation by his appointed counsel—we can be quite certain that he would have been met not only with arguments as to asserted substantive inadequacies of that contention but with the added argument that he should have raised that issue when it first arose at trial.

*Id.* at 403. We granted a conditional writ of habeas corpus because "for the judge not to have engaged [the defendant] in a *Faretta*-compliant colloquy upon" hearing the defendant's assertion of his right to self-representation "was an unreasonable application of *Faretta*." *Id.* Thus, our own precedent makes clear that timeliness is not a component of the substantive right to self-representation, and establishes that a trial court applies *Faretta* unreasonably if it does not engage in a *Faretta*-compliant inquiry after the unequivocal and timely assertion of the right to self-representation.

Recognizing this, my colleagues in the majority attempt to distinguish *Moore*. First, they suggest, the instant case differs from *Moore* because "the defendant in *Moore* requested to represent himself multiple times." Maj. Op. at 10. The majority cites no authority, from *Faretta* or elsewhere, that a request for self-representation must be repeated "multiple times" in order to trigger a trial's court's obligations under *Faretta*. The majority's suggestion to the contrary is but a reiteration of its general belief that the facts of *Faretta* are integral to the Supreme Court's holding in that case. Second, the majority suggests, *Moore* is distinguishable because the trial court there "flat-out failed to exercise its discretion and ultimately did not rule on those requests [and] let the issue go by default instead." *Id.* (quoting *Moore*, 531 F.3d at 403). Thus, the majority argues, because the trial court here did expressly rule on Hill's request—summarily, and not in compliance with Michigan state law or court rules, as already found by the Michigan courts—that somehow meaningfully distinguishes *Moore* from the facts of this case. The majority again cites no authority supporting this conclusion.

Finally, the majority states that "in *Moore* we expressly observed that the defendant's requests 'were not rejected for untimeliness, either at trial or by the state appellate court,' thus distinguishing it from the instant case." *Id.* (quoting *Moore*, 531 F.3d at 403). This is again a distinction without any meaningful difference—one that illustrates the majority's circular reasoning. This distinction is only relevant under the majority's assumption that timing encompasses the entirety of the Supreme Court's holding in *Faretta*. It does not, for the reasons previously discussed. Moreover, the *Moore* majority fully considered the timeliness of Moore's request, as quoted above. There is simply no meaningful difference between what the trial court did here and what the trial court did in *Moore*, except that the trial court here actually denied the request, rather than simply ignoring it. Both courts refused to engage in the *Faretta* inquiry. Still more troubling is that Judge Rogers' dissent in *Moore* made the same arguments the majority urges here. Thus, *Moore* is not so easily distinguished.[8]

---

[8]I also note that the majority ignores the most significant factual distinction between the instant case and *Moore*: that Hill's request for self-representation came on the first day of trial, before the jury was empaneled, while Moore's request for self-representation came on the third day of trial, after the jury was empaneled. *Moore*, 531 F.3d at 395. Thus, even under the majority's timeliness analysis, Hill's self-representation request was timelier than Moore's request.

B.

The Michigan trial court did not conduct the requisite *Faretta* inquiry after Hill asserted his right to represent himself unequivocally. As soon as Hill realized that his attorney was not going to file the pre-trial motions that they had discussed, he told his attorney to tell the court that he wanted "to represent himself in pro per." (R. 7-7, Trial Tr. 9/10/07, PageID #155.) Rather than determine whether Hill was waiving his right to counsel voluntarily and with full awareness of the consequences, the trial court summarily denied Hill's request. This complete failure to conduct any sort of inquiry violated *Faretta*'s mandate that the trial court must investigate a litigant's request to proceed without counsel. 422 U.S. at 807, 835; *see also Moore*, 531 F.3d at 403-04. Accordingly, Hill is entitled to habeas relief because the Michigan courts unreasonably applied federal law. 28 U.S.C. § 2254(d)(1).

Nor do I stand alone in this view. A careful reading of the Michigan Court of Appeals' and Michigan Supreme Court's decisions makes clear that these courts, too, believe the trial court did not satisfy the requirements of *Faretta* in this case. The Michigan Court of Appeals acknowledged that the trial court utterly failed to ask Hill questions to determine whether he waived his right to counsel intelligently and voluntarily. *Hill*, 766 N.W.2d at 27 (citing *Anderson*, 247 N.W.2d at 859-60). The *Anderson* decision on which the court relied is itself premised, in part, on *Faretta*. 247 N.W.2d at 859-60 (discussing *Faretta*). Nonetheless, the appeals court erroneously affirmed Hill's convictions because Hill made his request through counsel. The Michigan Supreme Court vacated that portion of the Michigan Court of Appeals' decision, but affirmed its finding that the trial court failed to comply with *Anderson* and, by extension, *Faretta*. *Hill*, 773 N.W.2d at 257 ("[O]ur case law does not require that the defendant must personally assert his constitutional right to self-representation . . . before the request is valid. Moreover, if the [trial court] had complied with the requirements of *People v. Anderson* . . . , a reviewing court could evaluate whether the defendant's request was knowingly, intelligently, and voluntarily made.")

Nonetheless, despite finding in Hill's favor on the *substantive merits* of his self-representation claim, the Michigan Supreme Court affirmed his conviction on several other grounds—all either implicitly or explicitly related to timeliness: (1) Hill's request was "not

timely"; (2) "granting the request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business"; and (3) the trial court, in stating it would deny Hill's request "at this time," did not permanently foreclose Hill's opportunity to raise the self-representation issue again after jury selection, but Hill "never renewed his untimely request." *Id.* Only the second rationale is substantive; the other two are both procedural. I will first address rationales two and three. I will then discuss rationale one, which is the same rationale relied upon by the majority in affirming the district court's denial of habeas relief.

### 1.      Disruption and Inconvenience

The Michigan Supreme Court concluded that "granting [Hill's] request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business." *Hill*, 773 N.W. 2d at 257. It is unclear whether this statement was intended to echo the trial court's statement that self-representation by Hill was "not going to be helpful" to Hill's defense. Assuming arguendo that this is an adjudication "on the merits" to which AEDPA deference applies, denial on such a basis plainly violates federal law as established by *Faretta*.

In *Faretta*, the Court held that a trial court may not insist that the defendant "master[] the intricacies of the hearsay rule" or a state's criminal code before granting a request to proceed pro se. *Faretta*, 422 U.S. at 836. The Court noted that "[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Id.* at 834. But the Court clearly held that effectiveness was immaterial to the inquiry of whether a defendant could represent himself: "[A]lthough [the defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'"[9] *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)). Accordingly, the trial court here violated "clearly established Federal law, as determined by the Supreme Court" when it prevented Hill from

---

[9]The Criminal Procedure Professors as amicus curiae dispute this point. Law Professor Amicus Br. at 5-6. They note that empirical research shows that pro se state felony defendants are more successful than felony defendants represented by counsel. *Id.* at 6 (quoting *Edwards*, 544 U.S. at 178) (citing Erica J. Hashimoto, *Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant*, 85 N.C. L. Rev. 423, 428 (2007))). Regardless, the point remains that it is not for courts to judge whether a defendant will be better off with counsel; that decision rests with the defendant exclusively. *See Faretta*, 422 U.S. at 834.

proceeding pro se because the court believed that dismissing counsel would not help Hill's defense. 28 U.S.C. § 2254(d)(1).

To the extent the Michigan Supreme Court's finding that "granting [Hill's] request at that moment would have disrupted, unduly inconvenienced, and burdened the administration of the court's business," *Hill*, 773 N.W.2d at 257, was based on the timing of Hill's request, the majority, in finding that *Faretta* "can only be read to require a court to grant a self-representation request when the request occurs weeks before trial," Maj. Op. at 8, echoes similar concerns. This, again, is not adjudication on the merits. 28 U.S.C. § 2254(d). Again assuming AEDPA deference applies, denial on such a basis plainly violates federal law as clearly established by *Faretta*. As an initial, practical matter, I question the notion that a request for self-representation made "weeks before trial" is any less untimely, potentially disruptive, inconvenient, or burdensome than, as here, a request made the morning of trial. How many weeks must there be between the date of the request and the date of trial? Is one-and-a-half weeks sufficient? Or is more time required? No matter what arbitrary benchmark one imposes, *any* request by a criminal defendant to represent himself, whether it comes days, weeks, or months before trial, is potentially disruptive to the administration of the court's business—for precisely the reasons the trial court and the Michigan Supreme Court articulated here. Courts are unaccustomed to criminal defendants representing themselves, and in the great majority of cases, particularly in light of what is at stake, it may not be advisable for a criminal defendant to do so. But the *Faretta* Court explicitly anticipated—and rejected—this concern. *Id.* at 834 ("It is *undeniable* that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly.") (emphasis added). Nothing in *Faretta* suggests that a criminal defendant's constitutional right to self-representation must yield in the face of nothing more than the trial court's concern for its own convenience and self-interest.

## 2.    Hill's "Failure" to Renew his Request

In addition to holding that Hill asserted his right to self-representation too late, the Michigan Supreme Court also suggested that Hill had waived his right to self-representation

because he did not renew the request. *Hill*, 773 N.W.2d at 257. The Michigan Supreme Court reasoned that, when the trial court stated it would deny Hill's request "at this time," the trial court did not permanently foreclose Hill's opportunity to raise the self-representation issue again after jury selection. *Id.* The Michigan Supreme Court then seemingly faulted Hill for "never renew[ing] his untimely request." *Id.*

This rationale can be viewed only as a feeble attempt to distinguish *Faretta*, where it appears that Faretta made his request for self-representation at least twice. 422 U.S. at 807. The Michigan Supreme Court did not cite any case or rule requiring defendants to renew the request. Michigan therefore cannot credibly claim that this is an adequate and independent state ground barring federal review of Hill's claim.

Additionally, this asserted rationale is not even remotely credible given the trial court's dismissive comments when Hill made his self-representation request. The trial court told Hill his request was "not going to be helpful," "[t]here [had been] no early indication of this," the court was "ready to proceed with the trial at this time," the court had no time "to inform [Hill] and have him prepared for following the rules of asking questions and rules of evidence," and "at this point it's not going to work." (R. 7-7, Trial Tr. 9/10/07, PageID #155-56.) There is absolutely nothing in these remarks that would have suggested to Hill that the trial court would be more amenable to considering his request after jury selection. On the contrary, everything about these comments informed Hill that the trial court was summarily denying his request because he had not made it earlier. If, as the trial court claimed, Hill's request was untimely when he made it *before* jury selection, the request was not magically going to become any timelier if Hill repeated it *after* jury selection. Nor would the request be any less "disruptive" following jury selection. Thus, even assuming AEDPA deference applies, it is unreasonable to require a defendant to raise the issue again after the court has made it clear that the court would be hostile to that motion and unlikely to grant it.

Accordingly, the Michigan Supreme Court's contrary conclusion is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### 3.        *Untimeliness*

Finally, the majority concludes that timeliness is the crucial factor in this case and that the Michigan Supreme Court's reliance on the timing of Hill's request is not an unreasonable application of *Faretta* because the *Faretta* inquiry into whether a defendant's assertion of the right to self-representation is voluntary and intelligent is unnecessary where the request is untimely. But, Hill's argument is not and never has been that courts apply *Faretta* unreasonably if they enforce an existing state rule that defendants must assert their right to represent themselves before trial. *See* Appellant Br. at 2; Appellant Reply Br. at 3-4; Supp. Appellant Br. at 10. Rather, Hill argues that Michigan had no such rules, and absent such rules the trial court was required to ask him questions to determine whether he voluntarily and intelligently waived his right to counsel, whether he was competent, whether he could follow the court's rules, and, if the court was concerned about timing, why his request came at that time. Appellant Reply Br. at 3-4.

The crux of the case is this: the majority and the Michigan Supreme Court excuse the trial court's failure to make any *Faretta* inquiry at all on the basis of Hill's alleged failure to make a timely request; this can only be understood as a procedural ruling. I conclude that although *Faretta* and the cases that followed impliedly allow both the imposition of independent and adequate procedural requirements, which Michigan did not impose, and also permit a trial court's consideration of the timeliness of the request and the defendant's purpose in making the request as part of the matrix in making the *Faretta* inquiry, it is an unreasonable application of *Faretta* and its progeny to conclude that a trial court can dismiss a defendant's self-representation request without any meaningful inquiry where the request is not barred by an adequate and independent state procedural rule. Simply stated, a state rule that a defendant must make his request by a certain time is a *procedural* requirement, not part of the *substance* of the right to self-representation. This is because a timeliness inquiry is not a part of *Faretta*'s holding; it can be an independent and adequate state ground for denying relief,[10] but not one on which Michigan can rely on the facts of this case.

---

[10]As amicus, Garry Jones argues that the timeliness requirement is a procedural issue governed by state law. Jones Amicus Br. at 3-6. I agree.

Michigan argues that the holding of *Faretta* is that a defendant has the right to proceed without counsel when he voluntarily and intelligently elects to do so in a timely manner. Supp. Appellee Br. at 12. Michigan bases its argument on the Supreme Court's references to the timing of Faretta's requests to represent himself and the Court's conclusion that "under these circumstances, . . . the California courts deprived him of his constitutional right to conduct his own defense." *Id.* (quoting *Faretta*, 422 U.S. at 835). The majority, as previously discussed, seizes on these three words.

But, as also previously discussed, the Supreme Court's holding in *Faretta* does not promulgate a timeliness requirement. And why would it? States are free to impose various procedural and timing requirements on the assertion of constitutional rights. *See Ford v. Georgia*, 498 U.S. 411, 423 (1991). There is nothing in the Supreme Court's holdings regarding the *substantive* right to self-representation that implies that timeliness is a mandatory requirement. In *Martinez*, the Court made the truly unremarkable observation that "the right to self-representation is not absolute." 528 U.S. at 161. Most rights are not.[11] The *Martinez* Court simply reiterated that a defendant must waive his right to counsel voluntarily and intelligently. *Id.* at 161-62. The Court further noted "most courts require him to do so in a timely manner." *Id.* at 162. But the Court never said that timeliness was an essential element of the right to self-representation. *See id.* at 161-62. Indeed, the Court's passing statement confirms a well-established rule that "looking to local rules for the law governing the timeliness of a constitutional claim" is appropriate. *Ford*, 498 U.S. at 423. More importantly, nothing in *Martinez* alters a trial court's duty to determine whether a defendant waives his right to counsel voluntarily and intelligently. Accordingly, state courts are free to fashion procedural requirements that defendants assert their right to counsel at a certain time provided those rules strike the appropriate balance with the defendant's autonomy and liberty interest in a fair defense. *See* Law Professor Amicus Br. at 7-9; *Martinez*, 528 U.S. at 161-62. And states may enforce those rules as long as they meet the standards for adequate and independent state procedural grounds.

---

[11]*See, e.g., District of Columbia v. Heller*, 554 U.S. 570, 636 (2008) (the right to own a handgun); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006) (the right to counsel of choice); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 869 (1992) (the right to terminate a pregnancy); *Wheat v. United States*, 486 U.S. 153, 159-60 (1988) (the right to appointed counsel of choice); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (a criminal defendant's right to present evidence); *Waller v. Georgia*, 467 U.S. 39, 45 (1984) (the right to a public trial).

The Michigan Supreme Court held that Hill's claim was barred by procedure, ignoring the substantive question of whether the trial court violated the Sixth Amendment by failing to conduct a *Faretta* inquiry. Whether that procedural timing requirement bars this court's review[12] turns on whether Michigan's timeliness rule met the standard for adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 262-63 (1989). A state procedural rule is adequate and independent if it meets two requirements. First, the state procedural rule must provide defendants with an adequate opportunity to exercise the federal right. *See Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citing *Davis v. Wechsler*, 263 U.S. 22, 24 (1923) (Holmes, J.) ("Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.")). Second, the state's procedural rule must be "firmly established and regularly followed." *Id.* (quoting *James v. Kentucky*, 466 U.S. 341, 348 (1984) (internal citation omitted)).

Procedural rules are matters of state law. But states cannot use a timeliness rule to dispose of a defendant's claim unless the state has "timely exercise[d] . . . the local power to set procedure." *Ford*, 498 U.S. at 423. In *Ford*, the Georgia Supreme Court held that a defendant's *Batson*[13] claim was untimely because he did not raise the issue in the period between the selection of the jurors and the administration of their oaths. 498 U.S. at 422-23. But at the time of the defendant's trial, Georgia law permitted defendants to challenge a prosecutor's use of peremptory challenges even after the jury had been sworn. *Id.* The Supreme Court granted certiorari to determine whether the timeliness requirement that the Georgia Supreme Court enforced was an adequate and independent state ground. *Id.* at 418. The United States Supreme Court noted that "[t]he appropriateness in general of looking to local rules for the law governing the timeliness of a constitutional claim is . . . clear." *Id.* at 423. It remarked that *Batson* had "imposed no new procedural rules and declined either to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges, or to decide when an

---

[12]Federal courts do not have jurisdiction to review state court adjudications of federal constitutional questions if the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A habeas petitioner can overcome a valid procedural bar if he can show "cause" and "prejudice." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

[13]*Batson v. Kentucky*, 476 U.S. 79 (1986).

objection must be made to be timely." *Id.* at 423 (quoting *Batson*, 476 U.S. at 99-100). Instead, the Court allowed state and lower federal courts to fashion proper deadlines and procedures to implement *Batson*. *Id.* Nevertheless, the Court held that the Georgia Supreme Court erred by holding that the defendant's claim was procedurally barred because it "appl[ied] a rule unannounced at the time of the [defendant's] trial," and therefore the procedural rule was an inadequate procedural bar. *Id.* at 424.

The same is true with respect to the timeliness requirement that the trial court enforced in Hill's case. At the time of Hill's trial, Michigan did not have a rule establishing that a defendant may not assert his right to self-representation on the day of the trial. Michigan has not cited any state court rules or caselaw to show that defendants must assert their right to self-representation before the day of trial. To the contrary, a review of Michigan's caselaw at the time of Hill's trial reveals that Michigan had a different rule in place: requests to proceed to trial pro se on the day of trial are *not* untimely per se. *See Anderson*, 247 N.W.2d at 859 (holding that the trial court violated the defendant's right to self-representation when it denied the defendant's request to continue without counsel on the day of trial, after the attorneys had begun voir dire). Hill's expectation was that a request to proceed to trial pro se before the court empaneled a jury was timely. Further, Michigan cannot reasonably bar review of a constitutional claim if it has not "exercise[d] [its] local power to set procedure" in a timely fashion. *Ford*, 498 U.S. at 423. Thus, the timeliness requirement that the Michigan Supreme Court applied in Hill's case was not an adequate and independent state ground to warrant dismissal of his claim. And it is "clearly established Federal law, as determined by the Supreme Court" that states may not enforce a procedural bar by invoking an unannounced rule. *Id.* at 424.

The majority objects to discussion of this issue, asserting that it "addresses an argument not raised by Hill, but raised only in an amicus brief" that "is not simply a variation on the claim at issue" but "poses an entirely new challenge never before raised in the parties' briefing or in any court ruling," and which "has been effectively forfeited by Hill." Maj. Op. at 11 n.2. However, Hill argues:

> [I]f a state required (by statute, case law, etc.) that any *Faretta* request be made by a certain deadline, or if in a particular case a court had entered an order to the same effect, then the court likely could deny a request solely because it was made

after that deadline (certainly absent a good excuse for the delay). That is because the government has a valid interest in ensuring compliance with its statutes, court orders, etc. *See Faretta*, 422 U.S. at 834 n.46 (noting that the right of self-representation is not "a license not to comply with the relevant rules of procedural and substantive law"). But here there was no formal deadline, i.e., no pre-existing rule, order, etc., requiring Hill to make his request earlier than he did.[15]

_____

[15]To the contrary, as noted the Michigan Supreme Court had long refused to adopt a categorical before-trial deadline for making *Faretta* requests. *See* . . . [*Hill*, 773 N.W.2d at 258 & n.4 (Kelly, C.J. dissenting) (collecting cases)].

Supp. Appellant's Br. at 10.

Hill may not have used magic words to the majority's liking, but the gist of the quoted argument is clear: *Faretta* allows a state to impose timing constraints on the assertion of the right to self-representation, but Michigan has not done so. This is hardly a forfeiture of the issue. There was no procedural default and in the absence of such a procedural default, *Faretta* and the cases that followed require trial courts to meaningfully address the substance of a defendant's self-representation request.

Accordingly, all of the reasons the Michigan Supreme Court provided for upholding the trial court's denial of Hill's right to self-representation fail. The trial court deprived Hill of his Sixth Amendment right to self-representation.

## V.

Based on the foregoing, I would find that the Michigan trial court violated Hill's constitutional right to self-representation by failing to inquire into whether Hill was choosing to waive his right to counsel intelligently and voluntarily. The Michigan Supreme Court's decision to affirm Hill's conviction, despite this clear violation, rested solely on procedural grounds that are neither supported by Michigan law nor entitled to deference under the Antiterrorism and Effective Death Penalty Act. Accordingly, I would **REVERSE** the district court's denial of a writ of habeas corpus.